IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARMEN M. VALENTIN,

    Plaintiff,

      v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

CIVIL NO. 10-2201 (CVR)

## OPINION AND ORDER

## INTRODUCTION

On December 9, 2010, plaintiff Carmen M. Valentín (hereafter plaintiff "Valentín") filed a complaint seeking judicial review of the final decision of defendant, the Commissioner of Social Security (hereafter "Commissioner"), denying her application for a period of disability and ensuing disability benefits. (Docket No. 1).[1]

On December 9, 2010, before the Commissioner had answered the Complaint or filed a copy of the administrative record, the case was referred to a Magistrate Judge, apprising, however, that no later than December 17, 2010, plaintiff was to inform whether she consented to jurisdiction of a Magistrate Judge to include the entry of judgment. (Docket No. 3 and 5).[2]  On same date,  counsel for plaintiff Salvador Medina De La Cruz notified

---

[1] U.S.C. Sec. 405(g) provides for judicial review of the final decision of the Commissioner.
"... [t]he court shall have power to enter, upon the pleadings and transcript
of the record, a judgment without remanding the cause for rehearing".  Section 205(g).

[2] *See* In re Sheridan, 362 F.3d 96 (1ˢᵗ Cir. 2004) (where the parties' actions appear to speak as clearly as words, consent may be implied) (*citing* In re G.S.F. Corp., 938 F.2d 1467 (1ˢᵗ Cir. 1991); *see also* Roell v. Withrow, 538 U.S. 580, 591, 123 S.Ct. 1696 (2003) (consent to proceed before a Magistrate Judge can be inferred from a party's conduct during litigation but notice of the right to refuse the magistrate judge is a prerequisite to any inference of consent.).

Carmen M. Valentín v. Commissioner of S.S.
Opinion and Order
Civil No. 10-2201 (CVR)
Page No. 2

plaintiff consented to jurisdiction of the Magistrate Judge.  (Docket No. 6).[3]   Title 28, United States Code, Section 636(b)(1)(A), (c)(1) and (c)(2); Federal Rule of Civil Procedure 73(a-c).

On June 1, 2011, the Commissioner filed the Social Security transcript and its answer to the complaint.  (Docket Nos. 13 and 14).

On November 29, 2011, plaintiff Valentín filed her memorandum of law and defendant filed its memorandum, after a third extension of time was denied, on March 12, 2012.  (Docket Nos. 20 and 25).

## BACKGROUND

On April 3, 2006, plaintiff Valentín filed an application for a period of disability and disability insurance benefits alleging disability as of December 31, 2004.  The application was initially denied.  On reconsideration, plaintiff Valentín was found disabled beginning on October 2, 2006, but not prior to that date.  On June 30, 2009, the requested administrative hearing seeking an earlier onset date of disability was held.  Thereafter, the presiding Administrative Law Judge ("ALJ") considered the evidence submitted on the record for plaintiff Valentín waived being present and to testify.  The ALJ's decision was issued finding that plaintiff Valentín was not disabled prior to October 2, 2006 and denying a request for a determination of disability from December 31, 2004 up to October 1, 2006. The Appeals Council denied review of said administrative decision, which became the final determination as to which herein plaintiff Valentín seeks judicial review.

---

[3] The government has provided a blank consent to proceed before a Magistrate Judge in all Social Security cases.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

Plaintiff Valentín, who meets the insured status requirement of the Social Security Act for the date at issue, claimed disability as of December 31, 2004, and has not engaged in substantial gainful activity since such date. She submitted suffering from severe impairments because of right shoulder osteoarthritis, right carpal tunnel syndrome, diabetes mellitus and having developed an emotional condition, categorized mostly as major depression, recurrent. Plaintiff Valentín previously worked as an assembly machine operator in the pharmaceutical factory from January 1, 1973 through December 31, 2004.

After the administrative hearing and without a medical or vocational expert testimony, the ALJ determined plaintiff did not have an impairment or combination thereof which met or equal the listed impairments during the period between the alleged onset date and the already established date of disability of October 2, 2006, that is, leaving as not disabled the onset date of December 31, 2004 through date prior to October 1, 2006. The ALJ concluded that during said closed period of alleged disability plaintiff retained the residual functional capacity to perform medium type of work, except that plaintiff Valentín was limited to simple, repetitive work with no contact with public and only occasional contact with peers and supervisors. (Transcript p. 19). The ALJ determined plaintiff Valentín had worked for over thirty years at a factory assembling medical supplies and had developed symptoms related to her right shoulder and hand, receiving treatment from the State Insurance Fund. Although plaintiff attempted thereafter to return to work, she was under a lot of pressure from peers, upon having lost the ability to do the job quickly and accurately, for which she then retired. (*Id*., p. 20). The ALJ found the medical evidence

Carmen M. Valentín v. Commissioner of S.S.
Opinion and Order
Civil No. 10-2201 (CVR)
Page No. 4

related to the year 2004 as to psychiatric treatment for major depression only determined she had a mild condition.  As to arthritis at the right shoulder and carpal tunnel syndrome in the right hand, the ALJ concluded these conditions limited plaintiff Valentín's capacity to work, but not altogether precluded same, for which the ALJ found she could perform work within medium level of exertion.  (*Id.*, pp. 20-21).

In conclusion, the ALJ found plaintiff Valentín, who was an individual of advanced age on the onset date of alleged disability, with high school education and work experience as an assembly machine operator, was not under disability during the period claimed of onset date of December 31, 2004 through October 1, 2006, for she could perform unskilled medium type of work and her mental condition was not severe enough prior to such date to preclude work activities.

**LEGAL ANALYSIS**

The Court's review in this type of cases is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. *See* Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 16 (1ˢᵗ Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater,  172 F.3d 31, 35 (1ˢᵗ Cir. 1999); Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1ˢᵗ Cir. 1991); Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1ˢᵗ Cir. 1986).

To establish entitlement to disability benefits, the burden is on the claimant to prove that he/she is disabled within the meaning of the Social Security Act. *See* Bowen v. Yuckert,

482 U.S. 137, 146-47, n. 5 (1987).  It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(a).  A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered.   20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is or not disabled. 20 C.F.R.  §§ 404.1520; *see* Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goodermote v. Sec. of Health & Human Servs., 690 F.2d 5, 6-7 (1ˢᵗ Cir. 1982).

Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity."  If he/she is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. *See* §§

404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e).

The evaluation process was followed at which time the ALJ determined plaintiff Valentín was unable to perform her past relevant work as an assembly machine operator because of inability to have frequent contact with peers and supervisors or to engage in repetitive motions where she could re-injure her shoulder and aggravate her carpal tunnel syndrom. (Transcript, p. 21).

Then at the fifth and final step of the process, the ALJ would still be required to determine whether plaintiff is able to perform other work in the national economy in view of the residual functional capacity for medium type of work, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform other work. §§ 404.1520(f).

In the instant case, the ALJ followed to the fifth step.  The ALJ determined at this step plaintiff Valentín could perform the full range of medium work, for which she was not considered disabled upon her ability to perform the full extent of such level of medium type of work, without exertional limitations –for her mental condition was classified as mild.

The claimant has the burden, under steps one through four, of proving that he/she cannot return to his/her former employment because of the alleged disability.  Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  Plaintiff Valentín was found by the ALJ unable to perform her previous past relevant work as an assembly machine operator.  Thereafter,  she was found at step five able to retain the ability for the full range of work within the medium level of exertion, without any non-exertional limitation except there should be no contact with public and only occasional contact with peers and supervisors.  On July 21, 2009, the ALJ issued his opinion concluding plaintiff Valentín was not disabled for the closed period of December 31, 2004 through October 1, 2006.  (Id., pp. 17-22).

Plaintiff Valentín submits that, once she was determined not able to work in her past relevant work for having a severe impairment, the Commissioner had to prove she could perform work that existed in the national economy to sustain his burden.  That is, at step five, the Commissioner should meet the burden of proving the existence of jobs in the national economy that plaintiff could perform.  20 C.F.R. 404.1520(f). When a claimant has one or more conditions related to non-strength limitations, that is, non-exertional limitations, the Grid does not adequately reflect what jobs would or would not be available. (Docket No. 20, pp. 6-7).

Plaintiff further argues the ALJ failed to consider the limitations as to use of the arms and hands, which are necessary for grasping, as well as her inability for frequent handling and fingering. These limitations, together with medical evidence of suffering from numbness paresthesia, arm weakness to the point of dropping things, which affect bilateral manual dexterity, have an impact in the occupational base and should have required the assistance of a vocational expert for the ALJ. (*Id.*, p. 11).

Additionally, plaintiff Valentín avers the existence of a non-exertional impairment, that is, major depression, recurrent, as diagnosed by examining psychiatrist and psychologist of record, which pertains to the time frame of onset date of claimed disability, constituted unrebutted medical evidence. This evidence, from physicians specialized in the mental field, including Dr. Pedro Fernández, who was identified as a psychiatrist, contradicts the ALJ's assertion as to credibility of notes being eroded for lack of indication as to the physician's specialty or diagnosis. (*Id.*, p. 14). More so when the ALJ gave greater consideration to the assessment of Dr. Roque Stella, a non-examiner consultant, which was clearly based on a partial record at the time of Dr. Pedro Fernández, on indication of not having timely received same, and as a result Dr. Stella missed a very descriptive and ample psychiatric treatment record. Counsel for plaintiff Atty. Medina De La Cruz argues the ALJ's opinion disregarded the most current medical information in the record by relying on the consulting opinion of Dr. Stella, which in turn was based on an incomplete record. (*Id.*, pp. 15-16).

Carmen M. Valentín v. Commissioner of S.S.
Opinion and Order
Civil No. 10-2201 (CVR)
Page No. 9

        In turn, the Commissioner in his memorandum of law discussed the ALJ's determinations and the medical evidence available as to exertional and non-exertional limitations.

        As to exertional conditions, the ALJ's finding was considered  supported by the record as to the shoulder and hand problems not preventing performance of the range of medium work for there was only minimal osteoarthritis and only mild right median nerve entrapment over the carpal tunnel.  There were no sensory, motor or reflex abnormalities and plaintiff had no disability as to sitting, standing, walking or handling objects.  (Docket No. 25, pp. 9-10).

        As to the mental condition, the Commissioner's memorandum avers the assessment of the treating physician Dr. Fernández showed no significant limitation for simple, repetitive work that involved no contact with the public and occasional contact with peers and supervisors, which further supports the ALJ's finding that plaintiff Valentín retained the mental abilities for unskilled, simple and repetitive work during the time frame examined.   Similarly, the consultative evaluation by Dr. Stella, upon a review of the evidence available, concluded plaintiff's mental condition was moderate and she had the capacity to understand, execute and remember simple instructions and work-like procedures.  (*Id.*, p. 11).

        The Court of Appeals for the First Circuit has indicated an ALJ is "not required to recite every piece of evidence that favored appellant." *See*  Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir. 1992) (noting that the level of articulation required is not precise). *See* 20 C.F.R. § 404.1527(d) ("We will always give good reason in our notice of determination or

decision for the weight we give your treating source's opinion); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The Commissioner, through the ALJ, is authorized to give greater weight to testimony and reports of medical experts commissioned by the administrative agency than to testimony and reports of other medical experts in determining whether a claimant is disabled. Similarly, the ALJ is entitled to reject a treating physician's conclusions that a claimant is totally disabled and accept contradictory medical evidence in the record. Keating v. Secretary of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988). That more weight is given to those reports of non-primary treating physician is not an error of the ALJ. See Barrientos v. Secretary of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987).

The ALJ's opinion herein made reference to the medical record showing plaintiff, while receiving treatment from the State Insurance Fund for her right shoulder and hand, was also seen by psychiatrist Carmen Cotto during eight sessions. Plaintiff was diagnosed with major depression and was off from work for a time. Dr. Cotto's initial diagnosis was on August 20, 2004. Plaintiff indicated having suffered a nervous breakdown in 2001 and receiving treatment at the Hospital Panamericano around August, 2001. There were no subsequent hospitalizations. After plaintiff Valentín retired from work, she started treatment with Dr. María Rodríguez Rosario on October 24, 2006. On said record, the ALJ concluded plaintiff Valentín's mental limitations were mild. (Transcript, p. 20).

Courts give deference to an ALJ's interpretation of the medical record and notice that, although an ALJ is not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion, upon the existence of conflicts in the medical record from the report and sources, it is still not for the Court to resolve same. *See* Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999); Lizotte v. Secretary of Health & Human Servs., 654 F.2d 127 (1st Cir. 1981) (the resolutions of conflicts in the evidence and the determination of the ultimate question of disability is for him [the ALJ], not for the doctors or for the courts). *See also* Rodríguez v. Secretary of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

To review the final decision of the Commissioner courts must determine if the evidence of record meets the substantial evidence criteria. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The findings of the Commissioner as to any fact are conclusive, if supported by the above stated substantial evidence.[4] The court would set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. *See* Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez, 647 F.2d at 222.

A review of the record as to plaintiff Valentín shows she performed work with Baxter Healthcare Corporation for close to thirty years from September 5, 1973 to December 31, 2004. On the later date, plaintiff submits she could not continue to work as an Assembler,

---

[4] Falu v. Secretary of Health & Human Servs., 703 F. 2d 24 (1st Cir. 1983).

that is, assembly machine operator of pharmaceutical goods, because once she was released from the State Insurance Fund her health condition would not allow her to meet the demands of her employment. She could not concentrate enough and things would fall from her hands. (Transcript, p. 90).

There is a release document from First Hospital Panamericano which states hospitalization from August 15, 2001 through August 21, 2001. (*Id.*, p. 131). The discharge summary relates she was admitted due to depressed mood, anxiety, insomnia, poor appetite, poor concentration, fear, crying spells and loneliness. (*Id.*, p. 133). Upon release from the hospitalization, she was referred for support group meetings which were to be held on the 2nd and 4th Wednesday of each month, as it appears from referral by Dr. Roque and a psychologist Dr. Tua. (*Id.*, p. 135). Medications were also prescribed for her diagnosed major depression, single, non-psychotic upon discharged, to include Zoloft 50 and Trazodone 50. (*Id.*, pp. 139-140). After partial hospitalization in 2001, by the year 2003, the patient was not having treatment for her emotional condition but showed symptoms upon evaluation by one Edna I. Vidró Bonilla. Plaintiff was having symptoms of sadness, frequent crying bouts, anhedonia, irritability, lack of concentration, isolation and insomnia for the two months. (*Id.*, p. 144).

The State Insurance Fund's notes of September 2004 indicate plaintiff Valentín was having problems with co-workers and feeling tired all the time. She daydreamed a lot and her papers were accumulating while everyone was upset at her for which she was feeling sad, anxious and angry. The pressure at work was great, but she had adequate affect, without perceptual disorders and was also coherent and logical. (*Id.*, p. 178).

Progress notes from the State Insurance Fund dated December 29, 2004 refer to complaints of pain all the time, specially as to the shoulder. The patient was oriented in the three spheres but continued on medication for her mental condition and was still working. There were no suicidal or homicidal ideas and no perceptual disorders . She was coherent, logical and relevant, kept visual contact and showed no cognitive disorder, but had anxious affect. (*Id.*, pp. 155, 156 and 158). By November of 2004, psychiatrist Dr. Carmen Cotto changed her status to continue work and continue with ambulatory services. (*Id.*, p. 164). Notes of November 9, 2004 refer to a patient who was alert, oriented, organized, dressed in a casual manner, coherent, logical and relevant. Her affect was a little depressed but had good impulse control. There has been some improvement but was still depressed. (*Id.*, p. 166). The diagnosis as to the mental condition by August 11, 2004 was Diagnosis Code 296.23,[5] that is, major depressive affective disorder, single episode, severe, without mention of psychotic behavior. (*Id.*, p. 182). See also 296.32 at page 203.

Formerly, Dr. Pedro J. Fernández Rodríguez referred to a first visit on December 3,2003 and last visit of October 20, 2005 because of the mental condition. The signs and symptoms were anhedonia or pervasive loss of interest, decreased energy, appetite disturbance, blunt, flat or inappropriate affect, feeling of guilt or worthlessness, mood disturbance, difficulty thinking or concentrating, persistence disturbances of mood or affect and sleep disturbance. (*Id.*, p. 261). An internist evaluation performed in June of 2006 noted the patient as alert, well oriented, with normal memory. She was cooperative during the interview. (*Id.*, p. 285).

---

[5] 296.23 is a billable medical code that can be used to specify a diagnosis on a reimbursement claim.

The record also shows a psychiatric evaluation by Dr. Armando Caro on July 26, 2006, who noted the patient seemed to have been in psychiatric treatment by Dr. Pedro Fernández since March of 2005.  She last worked as an assembler in the year 2005.  The patient was dependent on her son for house chores activities and did not handle money nor attended social activities.  (*Id.*, p. 296).  Ms. Valentín appeared well groomed, without make-up and was accompanied by her son in private transportation.  Eye contact was fair and moderate psychomotor retardation was noted.  Speech was fluent, coherent and logical without flight of ideas or looseness of associations.  Her mood was depressed and affect was constricted.  The patient was oriented in time, place and person.  Concentration was impaired and could not make simple subtractions.  Immediate memory was preserved and short term memory was impaired.  Recent memory was preserved.  Judgment and insight were poor.  The diagnostic impression was major depressive disorder, moderate.  (*Id.*, p. 297).

The record shows the documentation from Dr. Hernández was not received by the date of August 9, 2006.  Thus, as indicated by counsel for plaintiff, in submitting the consultative evaluation, Dr. Roque Stella omitted medical evidence and record from the treating psychiatrist, Dr. Pedro J. Fernández Rodríguez for not being available. (*Id.*, pp. 302, 320).  Still, there is no clarification in Dr. Fernández Rodríguez' notes whether these symptoms were present since the first visit in 2003 or were developed by the last visit in 2005, except for some handwritten notes which appear in his record referring to December 3, 2003.  (*Id.*, p. 281).  As such, Dr. Roque Stella's omission is inconsequential.

Carmen M. Valentín v. Commissioner of S.S.
Opinion and Order
Civil No. 10-2201 (CVR)
Page No. 15

Furthermore, Dr. María F. Rodríguez Rosario also stated the earliest date she noted the description and limitations of plaintiff's mental condition was on October 24, 2006 wherein the patient was described as having for the most part marked limitations submitted through the questionnaire. (*Id.*, pp. 333-336). Similarly, the notes of Dr. Rijo Family Clinic, although referring to some time in July 13, 2006 as date of first visit, describes symptoms and diagnostic as of the last date of February 21, 2008, indicating an irregular and occasional frequency of visits. (*Id.*, p. 392).

There is an electrodiagnostic examination dated November 8, 2004, which indicates the EMG and NCS of the upper extremities were compatible with mild right median nerve entrapment across carpal tunnel. (*Id.*, p. 167). Regarding the right shoulder condition, by June 2004, the patient had slight swelling and alleged slight discomfort on palpation and during movement. (*Id.*, p. 212). She was diagnosed in March of 2004 with minimal osteoarthritis. (*Id.*, p. 219). The internist evaluation by June of 2006 referred to no disability in sitting, standing, walking, handling objects, but unable to do regular work, without more. The extremities had no joint pain, no swelling or tenderness. There was normal movement of the back and neck. (*Id.*, p. 286). The range of motion was normal. (*Id.*, p. 293).

Thus, when all the progress notes and the medical evaluations are duly considered, they serve as substantial evidence in support of the ALJ's decision that plaintiff Valentín was not under disability prior to October 1, 2006. In view of the foregoing, this Magistrate Judge opines the decision of the Commissioner is supported by substantial evidence in the record as whole. As such, the decision of the Commissioner is AFFIRMED.

Carmen M. Valentín v. Commissioner of S.S.
Opinion and Order
Civil No. 10-2201 (CVR)
Page No. 16

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge, having carefully perused the record and considered whether there was substantial evidence in support of the decision rendered by the Commissioner concludes the Commissioner's decision is supported by substantial evidence and is AFFIRMED.

Judgment to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 22nd day of March of 2012.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE